# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ROBERT J. BARTELS, <br><br> Plaintiff, <br><br> v. <br><br> JEWEL FOOD STORES, INC., <br><br> Defendant. | Case No. 18-cv-04464 <br><br> Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiff Robert J. Bartels filed suit against Jewel Food Stores, Inc. ("Jewel"), alleging disability discrimination, a hostile work environment, and retaliation in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*. Before the Court is Jewel's partial motion to dismiss and/or strike Count I (discrimination) and Paragraphs 18 and 29[1] and to dismiss Count III (retaliation) of Plaintiff's Amended Complaint. (Dkt. 54.)[2] For the following reasons, the motion is denied in part and granted in part.

## BACKGROUND

The following facts are alleged in Bartels' Amended Complaint and are presumed true for the purpose of resolving the present motions. Bartels suffers from profound deafness. (Dkt. 51 at 1.) On November 2, 2015, Bartels began working at

---

[1] Although Defendant asks this Court to strike Paragraph 28 of Plaintiff's Amended Complaint (*see* Dkt. 55 at 6; Dkt. 61 at 7), it is clear from the briefings that Defendant intends to request this Court to strike Paragraph 29 (*see* Dkt. 55 at 5; Dkt. 61 at 3.)

[2] Jewel's initial motion to dismiss requested dismissal of certain paragraphs and Count II of Bartels' Amended Complaint alleging harassment. (Dkt. 54.) In its reply, however, Jewel concedes that Bartels has stated a cause of action for harassment. (Dkt. 61 at 2, fn.2.)

Jewel's 1777 S. Main Street location in Lombard. (*Id.* at 2.) He was hired to work 30 hours per week as a Front End Maintenance Clerk. (*Id.*) Beginning in June or July 2016, Bartels alleges that Store Director Brent Logerquist and Front End Supervisor Mark Kingery knew of his disability and discriminated against and harassed him on a regular basis. (*Id.* at 3.) For example, he alleges that after finding out about his deafness, Kingery significantly reduced his work hours. (*Id.* at 4.)

On one occasion, while cleaning the back shed per Logerquist's instruction, Bartels was stung by several wasps, in part because he could not hear them buzzing angrily around their nest, and broke his finger attempting to swat them away. (*Id.* at 4.) Logerquist mocked Bartels for breaking his finger, saying "It can't be broken! You hit like a girl and broke your finger?! Impossible." (*Id.* at 5.) The next day, Logerquist ordered Bartels to continue cleaning the back shed. (*Id.*) Bartels told him that it would be unsafe for him to do so because the wasp's nest was still in the shed, and he would be unable to hear the wasps buzzing due to his disability. (*Id.*) Shortly thereafter, Kingery demoted Bartels to bagger. (*Id.*)

On another occasion, Kingery told Bartels to gather shopping carts in the parking lot. (*Id.* at 6.) Bartels objected on the basis that he had not been trained for that job and that the job would put him in danger due to his deafness. (*Id.*) Kingery dismissed Bartels' concerns and simply told him to wear a vest. (*Id.*)

Kingery and Logerquist openly mocked Bartels in front of other employees and customers by, among other means, talking to him in a demeaning, "caveman-

like" fashion and speaking to him through lip reading even though Bartels had repeatedly expressed that he could not understand lip reading. (*Id.* at 6-7.)

Bartels alleges he made multiple complaints to Jewel regarding this behavior. (Dkt. 51 at 7.) He requested several times to be transferred to a different store, but his requests were ignored. (*Id.*) He called the employee hotline of Jewel's corporate parent twice but received no resolution. (*Id.*) He also complained to Assistant Store Manager Jason Olin about Kingery and Logerquist's behavior. (*Id.*) Bartels eventually chose to quit his job as a result of Kingery and Logerquist's discriminatory and harassing conduct. (*Id.*)

Soon thereafter, Bartels decided to file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). On November 10, 2016, Bartels filled out an intake questionnaire with the EEOC in which he detailed various instances of discrimination and harassment by Kingery and Logerquist. (Dkt. 60 Ex. B.) On January 13, 2017, Bartels filed a charge of discrimination with the EEOC, in which he stated the following:

> I was hired by Respondent [Jewel] on or about November 2, 2015. My most recent position was Bagger/Cart. Respondent was aware of my disability. During my employment, I was subjected to harassment and different terms and conditions of employment, including, but not limited to, having my hours reduced and being made to perform tasks outside my prescribed responsibilities. I complained to no avail. Subsequently, I was constructively discharged.
>
> I believe I have been discriminated against because of my disability, and in retaliation for engaging in protected activity, in violation of the Americans with Disabilities Act of 1990, as amended.

(Dkt. 51 at 2; Dkt. 60 Ex. A.) While Bartels did not have an attorney when he filed his charge, he later retained a lawyer, Ms. Catherine Hurlbut. (Dkt. 60 at 4.) On July 6, 2017, Ms. Hurlbut wrote a letter to the EEOC detailing various instances of discrimination and harassment suffered by Bartels at the hands of Kingery and Logerquist. (Dkt. 60 Ex. G.) On March 30, 2018, the EEOC issued a Notice of Right to Sue. (Dkt. 51 at 2.) Plaintiff timely filed this lawsuit on June 27, 2018 (Dkt. 1) and filed an Amended Complaint on April 29, 2019 alleging employment discrimination, a hostile work environment, and retaliation in violation of the ADA, 42 U.S.C. § 12101 *et seq.* (Dkt. 51.)

## **LEGAL STANDARDS**

A motion to dismiss tests the sufficiency of a complaint, not the merits of the case. *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir. 1990). "To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quotations and citation omitted). *See also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."). A court deciding a Rule 12(b)(6) motion accepts plaintiff's well-pleaded factual allegations as true and draws all permissible inferences in plaintiff's favor. *Fortres Grand Corp. v. Warner Bros. Entm't Inc.,* 763 F.3d 696, 700 (7th Cir. 2014). A plaintiff need not plead "detailed factual allegations", but "still must provide more than mere labels and conclusions

or a formulaic recitation of the elements of a cause of action for her complaint to be considered adequate under Federal Rule of Civil Procedure 8." *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016) (citation and internal quotation marks omitted). Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558, 127 S. Ct. 1955, 1966 (2007). Deciding the plausibility of the claim is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S. Ct. 1937, 1950 (2009)).

A motion to strike under Rule 12(f) allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally disfavored but can be used in the employment discrimination context to strike pleadings not included in the plaintiff's EEOC charge. *Dixon v. Americall Grp., Inc.*, 390 F. Supp. 2d 788, 790 (C.D. Ill. 2005) (citing *Conner v. Ill. Dep't of Natural Resources*, 413 F.3d 675, 680 (7th Cir. 2005)).

## **ANALYSIS**

Defendant moves this Court to (1) dismiss and/or strike Paragraphs 18 and 29 and Count I of Plaintiff's Amended Complaint to the extent they make out a claim for failure to accommodate and (2) dismiss Count III of Plaintiff's Amended Complaint for failure to state a claim of retaliation upon which relief can be granted. As Plaintiff

has agreed to remove Paragraph 18 from his Amended Complaint (*see* Dkt. 60 at 2, fn.1), the Court does not address Defendant's arguments as to that paragraph in this opinion.

I. **Plaintiff's Failure to Accommodate Claim: Paragraph 29 and Count I**

Defendant argues that Bartels' failure to accommodate claim must be dismissed because that claim was not included in his EEOC charge and is thus not properly exhausted. Under the ADA, plaintiffs are required to meet certain procedural prerequisites before bringing a federal lawsuit. A plaintiff must (1) file a timely charge with the EEOC, and (2) receive a right to sue letter from the EEOC. 42 U.S.C. § 2000e-5; § 12117. Subsequent to filing an EEOC charge, "[a] plaintiff cannot bring claims that were not included in the EEOC charge, unless the claims in the suit are reasonably related to, or can be inferred from, the allegations in the charge." *Elliot v. Dedelow*, 115 Fed.Appx. 881, 883 (7th Cir. 2004) (citing *Cheek v. Western and Southern Life Ins. Co*, 31 F.3d 497, 500 (7th Cir. 1994)). Claims are reasonably related if "there is a factual relationship between them," meaning "that the EEOC charge and the complaint must, at a minimum, describe the *same conduct* and implicate the *same individuals*." *Cheek*, 31 F.3d at 501 (italics in original). Courts also ask whether "the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." *Id.* at 500. The standard is a liberal one, under which the allegations of the EEOC charge are read broadly to take into account that EEOC charges are often filed by *pro se* applicants. *Miller v. Am. Airlines,*

*Inc.*, 525 F.3d 520, 525-26 (7th Cir. 2008); *Ezell v. Potter,* 400 F.3d 1041, 1047 (7th Cir. 2005).

Applying a broad reading to the EEOC charge, the Court finds the failure to accommodate allegations in Bartels' complaint are "reasonably related" to the statements in his EEOC charge. The EEOC charge states in relevant part: "During my employment, I was subjected to harassment and different terms and conditions of employment, including, but not limited to, having my hours reduced and being made to perform tasks outside my prescribed responsibilities." (Dkt. 60 Ex. A.) Paragraph 29 of Bartels' Amended Complaint describes an incident in which Bartels objected to his supervisor's order "to gather shopping carts in the parking lot" because the task "would put him in danger" due to his hearing disability and because "he had not been trained on how to collect carts or hired for that position." (Dkt. 51 at 6.) Bartels further alleges that his supervisor "dismissed Mr. Bartels' concerns, provided no accommodation and said simply to 'wear a vest.'" (*Id.*) This parking lot duty incident is a specific example of Bartels "being made to perform tasks outside[his] prescribed responsibilities," as stated in his EEOC charge. Thus, the Amended Complaint and EEOC charge involve the same individual—Bartels' supervisor—and the same conduct—Bartels being asked to perform duties outside of his responsibilities.

The Court believes a failure to accommodate claim would "reasonably be expected to grow out of an EEOC investigation" of the charge allegation that Bartels was "made to perform tasks outside [his] prescribed duties," because in investigating that claim the EEOC would likely have considered whether Bartels made a request

for an accommodation in relation to these tasks "and whether a conciliation might be possible on that basis given that accommodation is the essence of the ADA's protections." *Mudgett v. Centegra Health System. Inc.*, No. 04 C 6212, 2006 WL 1806390 (N.D. Ill. 2006). Thus, Bartels' failure to accommodate claim as alleged in Paragraph 29 and Count I of his Amended Complaint survives.

Defendant argues that the charge description alleges discriminatory treatment to the exclusion of an accommodation claim, relying on *Green v. National Steel Corp., Midwest Division* that stated "a failure to accommodate claim is separate and distinct from a claim of discriminatory treatment under the ADA." 197 F.3d 894, 897-98 (7th Cir. 1999). In *Green,* the plaintiff alleged that her employer failed to provide her with a desk chair, dimmed lighting, and a handicap parking spot to accommodate her disabilities. *Id.* at 898. Plaintiff's EEOC charge, however, claimed "only that she was terminated because of her disability." *Id.* at 897. The Seventh Circuit affirmed summary judgment on the failure to accommodate claim finding the employer's alleged failure to accommodate was completely unrelated to her complaint that she was wrongfully terminated. *Id.* at 898.

*Green*, which was decided on summary judgment, is distinguishable from the present case. Unlike the EEOC charge in *Green*, Bartels' charge includes an allegation that he was made to perform tasks outside his responsibilities. While this phrase follows the words "including, but not limited to," and thus may suggest that it is included as an example of "harassment and different terms and conditions of employment," it would be inequitable to rigidly hold Bartels, who was a *pro se*

applicant at the time, to the phrasing of an EEOC employee.[3] Adhering to the liberal standard of review required with *pro se* litigants, this Court finds that Bartels' EEOC charge alleged a claim of failure to accommodate in addition to harassment and discriminatory treatment.

In the alternative, Bartels argues that he has exhausted his failure to accommodate claim by adequately alleging failure to accommodate in the EEOC intake questionnaire, which he attaches to his response brief. He argues that the intake questionnaire should be considered in addition to the EEOC charge in deciding the permissible scope of the Amended Complaint.[4] Jewel does not dispute that the Court may consider the intake questionnaire in construing the scope of the EEOC charge but argues that the questionnaire fails to allege a claim for accommodation. (See Dkt. 61 at 2, fn. 2; 3.)

The intake questionnaire[5] clearly raises a failure to accommodate claim. Question 12 of the questionnaire asks, "Did you ask your employer for any change or

---

[3] EEOC charges are prepared by an EEOC employee who has reviewed the intake questionnaire and then are reviewed and signed by the applicant. *See e.g.*, *Jackson v. Local 705, Int'l Bhd. of Teamsters, AFL-CIO*, No. 95 C 7510, 2002 WL 460841 (N.D. Ill. Mar. 26, 2010).

[4] Bartles also relies on a letter his attorney, Ms. Hurlbut, submitted to the EEOC. Jewel objects to the Court considering Ms. Hurlbut's letter, (Dkt. 61 at 4), and the Court finds it unnecessary to rely on any of the contents of the Hurlbut letter to resolve the current dispute.

[5] The Seventh Circuit has repeatedly affirmed that when construing an EEOC charge for purposes of exhaustion, "[a]llegations outside the body of the charge may be considered when it is clear that the charging party intended the agency to investigate the allegations." *Cheek*, 31 F.3d at 502; *Vela v. Vill. of Sauk Vill.*, 218 F.3d 661, 664 (7th Cir. 2000); *Swearnigen-El v. Cook Cty. Sheriff's Dep't*, 602 F.3d 852, 865 (7th Cir. 2010). This is notwithstanding the Seventh Circuit's decision in *Novitsky v. American Consulting Engineers, L.L.C.*, 196 F.3d 699 (7th Cir. 1999), that a plaintiff could not bring a failure to accommodate claim where the claim was not included in the EEOC charge, even though it was included in the intake questionnaire. Despite the Court's broad language that "it is the charge rather than the questionnaire that matters," *see id.* at 702, the concurrence made clear that *Novitsky* does not control in the case of a "*pro se* person who signs a charge prepared by the EEOC, which leaves out critical information provided by the claimant to the EEOC in the intake questionnaire." *Id.* at 703 (Rovner, J., concurring). Bartels was *pro se* at the time he completed the intake questionnaire and EEOC charge.

assistance to do your job because of your disability?" (Dkt. 60, Ex. B.) Bartels checked the box for "Yes" and wrote that he asked for assistance from "Mark," his Front End Supervisor. (*Id.*) When asked to "[d]escribe the changes or assistance that you asked for," Bartels responded, "I asked to do [d]ifferent [t]ask, such as watering flowers out front of the store which is safer task. I explained that it's [n]ot safe to put a [d]eaf person in [p]arking lot without [h]earing [a]ids." (*Id.*) When asked, "How did your employer respond to your request?" Bartels wrote, "He said wear a [r]eflection vest." (*Id.*) Thus, contrary to Defendant's assertion that "there is nothing in the Intake Questionnaire to suggest that Plaintiff raised allegations related to parking lot duty for any purpose other than to support his claims of disability harassment" (Dkt. 61 at 3), the Court finds Bartels specifically cited parking lot duty as an example of Jewel's failure to accommodate.

Accordingly, Defendant's motion to strike is granted with respect to Paragraph 18 of Plaintiff's Amended Complaint. Defendant's motion to strike and or dismiss is denied as to Paragraph 29 and Count I of the Amended Complaint.

## II. Plaintiff's Retaliation Claim: Count III

In Count III, Bartels alleges that he was retaliated against in violation of the ADA. To state a claim for retaliation under the ADA, Bartels must "allege that the [Defendant] subjected him to an adverse employment action because he engaged in protected activity." *Sanders v. Illinois Dep't of Cent. Mgmt. Servs.*, 593 F. App'x 575, 577 (7th Cir. 2015). In his opposing brief, Bartels states that his complaints about Kingery and Logerquist's discriminatory and harassing behavior constitute

protected activity and his subsequent constructive discharge was an adverse employment action. (Dkt. 60 at 11.) Defendant argues that Plaintiff's retaliation claim fails to allege a causal link between Bartels' complaints and his constructive discharge and merely restates his claims for disability discrimination and harassment.

While a Plaintiff need not allege a causal connection at the pleading stage, *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1020 (7th Cir. 2013), he must still allege enough to make out a plausible retaliation claim—in other words, the facts as alleged and taken as true must raise a plausible inference that Bartels was constructively discharged *because of* his complaints whether or not a causal link is specifically alleged. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819 (7th Cir. 2014); *Jibson v. Northeast Illinois Reg'l Commuter R.R. Corp.*, No. 18 C 5594, 2019 WL 2297458, at *4 (N.D. Ill. May 29, 2019).[6]

Count III of Plaintiff's Amended Complaint does not include any mention of Bartels' complaints and fails to cite constructive discharge as an adverse employment action, but Plaintiff urges this Court to look at Paragraphs 35-37 of the Amended Complaint which are re-alleged and incorporated by reference into Count III, claiming that they adequately allege a claim of retaliation based on constructive discharge. In Paragraph 35, Plaintiff alleges that "he requested to be transferred to another store on multiple occasions," but "Defendant ignored his request" while

---

[6] Because the ADA's anti-retaliation provision, 42 U.S.C. § 12203(a), uses comparable language to that of Title VII, 42 U.S.C § 2000e–3(a), Title VII retaliation cases provide guidance for the assessment of ADA retaliation claims. *See Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir.2009); *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 511 (7th Cir.1998).

granting the transfer requests of other non-deaf employees in a shorter period of time. (Dkt. 51 at 7.) To the extent that this inequitable behavior led to Bartels' constructive discharge, it merely restates Bartels' claim for discriminatory treatment under Count I. (*Id.* at 8-9.) Furthermore, to the extent Bartels felt compelled to leave his employment because his transfer requests were ignored, this would again bolster his claim for discrimination and/or failure to accommodate under Count I. *See Pack v. Ill. Dep't of Healthcare & Family Servs.*, No. 13-cv-8930, 2014 WL 3704917, at *4 (N.D. Ill. July 25, 2014) (dismissing Plaintiff's ADA retaliation claim based on denial of transfer requests as duplicative of her accommodation claim).

In Paragraph 36 Bartels alleges that "he called the employee hotline…on two separate occasions" to complain but "received no follow-up or resolution." Bartels called back a few weeks later to "inquire[] as to the status of the investigation" but "was told the case was closed, with no further explanation." (Dkt. 51 at 7.) He also alleges that "he made separate complaints to Olin, to no avail." (*Id.*) To the extent Bartels resigned because his complaints were ignored, this Court fails to see how this allegation makes out a claim of retaliation distinct from Plaintiff's claim of a hostile work environment under Count II, which states that "Defendant engaged in unlawful employment practices …. when it fostered and *failed to correct* a hostile work environment against Mr. Bartels due to his disability." (Dkt. 51 at 9) (emphasis added). Neither does Plaintiff plead any fact to suggest that the denial of these complaints created unbearable working conditions "even more egregious than required for a hostile work environment claim" that ultimately forced him to resign.

*Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010); *Roby v. CWI, Inc.*, 579 F.3d 779, 785 (7th Cir. 2009) (dismissing a retaliation claim based on constructive discharge and holding that such a claim requires "plaintiff to show a more egregious situation than a hostile work environment").

Paragraph 37 underscores this Court's conclusion that Bartels' claim of retaliation based on constructive discharge is duplicative. It states, "Because of this continuous harassing and discriminatory behavior, Mr. Bartels had no choice but to resign his position. Having thus been constructively discharged, Mr. Bartels telephoned Kingery to quit." (Dkt. 51 at 7.) This suggests that Bartels resigned because of the discrimination and harassment he experienced at work *in spite of* his complaints rather than in the wake of retaliation he experienced *because of* the complaints.

To the extent Bartels attempts to allege that his complaints in Paragraphs 35 and 36 are what resulted in the discrimination and harassment he alleges throughout his complaint, there is not enough to suggest that this is more than a mere possibility. For example, Plaintiff does not allege when he made these complaints in relation to when he experienced discrimination and harassment. Nor does he allege that he experienced quantitatively more discrimination and harassment or qualitatively more severe discrimination and harassment after complaining. Without such information, the Court cannot assess whether it is plausible that his complaints led to the discriminatory and harassing behavior that ultimately caused him to resign.

Finally, in Count III Bartels alleges that Jewel retaliated against him by "demoting him and reducing his hours." (Dkt. 51 at 11.) Because Defendant has moved to dismiss the entirety of Count III, this Court must also assess whether Bartels has alleged a plausible claim of retaliation based on demotion or a reduction in hours. Again, Bartels does not tie this to any protected conduct. This might form the basis of discriminatory conduct in Count I, but Bartels has not alleged a plausible claim of retaliation based on demotion or a reduction in hours. Defendant's motion to dismiss Count III is granted.

## **CONCLUSION**

For the foregoing reasons, the Court grants in part, and denies in part, Jewel's motion to strike and/or dismiss. The motion is denied as to Count I and Paragraph 29 and granted as to Count III. Paragraph 18 of Plaintiff's Amended Complaint is voluntarily withdrawn.

E N T E R:

Dated: February 25, 2020

MARY M. ROWLAND
United States District Judge